1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHAWNTE ALSTON,

11              Plaintiff,                    No. CIV S-07-1876 GGH

12        vs.

13
     MICHAEL J. ASTRUE,                       ORDER
14   Commissioner of
     Social Security,
15
                Defendant.
16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying his application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

21   Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

22   BACKGROUND

23              Plaintiff, born April 10, 1984, applied on June 4, 2004 for disability benefits.  (Tr.

24   at 73-76.)  Plaintiff alleged he was unable to work due to schizophrenia and mental problems.

25   (Tr. at 48.)

26   \\\\\

                                                  1

In a decision dated June 7, 2007, ALJ Peter F. Belli determined plaintiff was not disabled.  The ALJ made the following findings:[1]

    1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

    3.    The claimant's impairments meet the requirements of Listing 12.09, based on 12.04, Appendix 1, Subpart P, Regulation No. 4.

    4.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.  The testimony of the witness is inconsistent with the medical record as described above.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
    Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.      The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).

6.      If the claimant were not abusing drugs, his mental impairments would be non-severe.

7.      The claimant's medically determinable impairments, other than methamphetamine abuse, are not severe. He does not have any impairment or impairments which, either singly or in combination, significantly limits his ability to perform basic work-related activities, nor does he have an impairment which constitutes more than a slight abnormality or slight limitation of function (20 CFR 416.921).

8.      If the claimant were abstinent from drugs, he would not be under a "disability" as defined in the Social Security Act (20 CFR § 416.920(c). Thus, drug abuse is a factor material to the finding of disability. Therefore, the claimant is not eligible for Supplemental Security Income payments (20 CFR 416.935).

(Tr. at 21-22.)

        In summary, the ALJ found that plaintiff's substance abuse was not only severe but met the criteria for a listed impairment[2] and was a contributing factor material to any other finding that plaintiff is disabled.[3] If substance abuse were eliminated from the picture, the ALJ

---

[2] It remains a curiosity that the Commissioner retains Listed Impairment 12.09 (presumptive impairment based upon substance abuse disorders) since Congress has determined that substance abuse is not a basis for disability. However, as this court has previously noted, the problem may be more theoretical than real because Listing 12.09 incorporates listed impairments for other mental disorders. In fact, Appendix 1 specifically states: "[l]isting 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." 20 C.F.R. Pt. 220, App. 1, § 12.00.A.

[3] In 1996, Congress amended 42 U.S.C. § 423 to eliminate drug and alcohol abuse as bases for finding disability. See Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") The ALJ herein followed the appropriate analysis for determining whether alcoholism or drug abuse is a contributing factor material to the determination of disability, as set forth in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001); see also, 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a). The

1 found that plaintiff's remaining mental impairment was not severe.

2 ISSUE PRESENTED

3       Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Consider

4 the Opinion of the Treating Physician; and B. Whether the ALJ Failed to Fully Develop the

5 Record.

6 LEGAL STANDARDS

7       The court reviews the Commissioner's decision to determine whether (1) it is

8 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9 the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

10 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

11 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

12 as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d

13 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

14 is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

15 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

16 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

17 rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

18 ANALYSIS

19     A.  Whether the ALJ Failed to Consider the Opinion of the Treating Physician

20       Plaintiff contends that the opinion of his treating psychiatrist, Dr. Dalida, was

21 improperly rejected by the ALJ.

22       The weight given to medical opinions depends in part on whether they are

23 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

24 _____

25 ALJ first determined, pursuant to the Commissioner's five-step inquiry, whether plaintiff is
disabled when the impact of substance abuse is considered.  Only after finding plaintiff disabled

26 did the ALJ determine whether the applicant would still be disabled if he stopped using drugs or
alcohol.

1  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4]  Ordinarily,

2  more weight is given to the opinion of a treating professional, who has a greater opportunity to

3  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

4  Cir. 1996).

5          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

6  considering its source, the court considers whether (1) contradictory opinions are in the record;

7  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

8  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

9  81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

10  be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

11  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

12  examining professional's opinion (supported by different independent clinical findings), the ALJ

13  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

14  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

15  weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

16  2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and

17  supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

18  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

19  881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is

20  _____

21          [4]  The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
22  psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
23  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
24  accordingly are given less weight than opinions from "acceptable medical sources."

25          [5]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

In regard to Dr. Dalida, plaintiff's treating psychiatrist, the ALJ explained:

> The undersigned give no evidentiary weight to the extreme findings assessed by Doctor Dalida, in her medical assessment which was completed in January 2007.  The undersigned believes she has failed to cite clinical findings or psychometric testing that are consistent with the degree of limitations she and the claimant allege.  She did not cite objective findings that relate to functional limitations and restrictions assessed; and her findings appear to be based upon the claimant's recitation of his subjective complaints.  It also appears that she did not examine the claimant at the time of her statement in January 2008, which suggests that her findings were an accommodation in part by the physician in an attempt to assess the claimant in her disability claim, rather than for treatment.  The record shows that the claimant was seen on five occasions for medication refills.  During the claimant's last visit in March 2006, Doctor Dalida noted that the claimant denied everything that was being asked of him; he denied substance abuse, yet he had a big substance problem.  She noted that overall, he seemed to be looking good and was not agitated.  The undersigned finds that the minimal findings noted at the time of her evaluations are not consistent with the extreme limitations she assessed, nor are they consistent with the findings in the other evidence of record, as described above.

(Tr. at 21.)

All of the aforementioned reasons are sufficiently specific and legitimate to reject this physician's opinion, and they are supported by the record.

The January 5, 2007 report referred to by the ALJ opines that based on plaintiff's schizoaffective disorder, bipolar type, plaintiff had a poor ability to understand and remember both detailed and very simple instructions, a poor ability to carry out such instructions, to attend and concentrate, and work without supervision.  (Tr. at 206.)  He also had a poor ability to interact with others, adapt to changes in the workplace, be aware of normal hazards, react appropriately, and use public transportation to travel to unfamiliar places.  (Id. at 207.)  Plaintiff was found to be unable to manage benefits in his own best interest.  His prognosis was poor.  Dr. Dalida stated that the last time she saw plaintiff was December 8, 2006.  (Id.)

It should be noted that although plaintiff asserts that Dr. Dalida was his treating psychiatrist from 2005 through 2007, the records contain duplicate copies of records, so that

1   plaintiff actually saw this doctor only ten times over a two year period.  (Tr. at 246-60, 194-205.)

2   Also worthy of note is that a visit on April 7, 2007, within months after the January, 2007 report,

3   indicated that plaintiff's secondary diagnosis after schizoaffective disorder, bipolar type, was

4   polysubstance dependence, yet Dr. Dalida did not note this disorder as a finding upon which she

5   based her assessment.  (Id. at 247, 206-07.)  This is especially noteworthy since Dr. Dalida

6   reported on previous visits that "[plaintiff] denies substance abuse and he has a big substance

7   abuse problem."[6]  (Tr. at 200.)  Further, Dr. Dalida stated that plaintiff claimed he had been

8   taking his medication but in the past he had not taken his medication, and that he had a history of

9   poor compliance with medication.  (Id.; tr. at 202.)  This psychiatrist did report that plaintiff was

10  "good when he is taking his medication," and he was "stable" with medication.  (Id. at 203, 204.)

11  Plaintiff's mother also reported to Dr. Dalida that plaintiff functioned well on the dose of

12  Zyprexa that he was currently taking at the time.  (Id. at 204.)  The question thus arises whether

13  Dr. Dalida evaluated plaintiff's functional ability in January, 2007, based on his behavior without

14  the medication or while on it, and to what extent plaintiff's substance abuse was figured into the

15  assessment.  Plaintiff himself refers to Dr. Dalida's notations of "a big substance abuse

16  problem," begging the question whether plaintiff's mental problem would be severe without

17  consideration of his substance abuse.  Plaintiff refers to other unnamed doctors who examined

18  plaintiff and diagnosed him with bipolar disorder and mood disorder, yet concedes that they also

19  diagnosed him with amphetamine abuse. Pl.'s Mot. at 6.

20          Also minimizing Dr. Dalida's evaluation is her statement on July 29, 2005 that

21  plaintiff would not answer questions she asked, and then walked out of the interview.  (Tr. at

22  196.)  Therefore, it is reasonable to assume that her evaluation is based on his subjective

23  complaints.  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on

24
        [6]  At this and other visits, it was noted that plaintiff's mood was euthymic, his affect
25  congruent, and his speech was normal.  His thought process was fairly linear.  At this time, he
    denied auditory hallucinations, paranoid ideations, and suicidal/homicidal thoughts.  (Id. at 200,
26  202, 204.)

1  a claimant's self-reports that have been properly discounted as incredible." Tommasetti v.

2  Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), *citing* Morgan v. Comm'r Soc. Sec. Admin., 169

3  F.3d 595, 602 (9th Cir. 1999) (*citing* Fair V. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

4  Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical

5  evidence." Id.

> Historically, the courts have recognized conflicting medical
> evidence, the absence of regular medical treatment during the
> alleged period of disability, and the lack of medical support for a
> doctor's report based substantially on a claimant's subjective
> complaints as specific, legitimate reasons for disregarding the
> treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v.
> Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required
> to accept the opinion of a treating or examining physician if that
> opinion is brief, conclusory and inadequately supported by clinical
> findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002).

12  Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008).

13  The ALJ chose to give weight to the reports of other physicians, including Dr.

14  Cornes at Yolo Mental Health who, unlike Dr. Dalida, found plaintiff's primary diagnosis to be

15  methamphetamine abuse, and then mood disorder NOS and marijuana dependence.  (Tr. at 170.)

16  Dr. Hudson opined that it was unclear whether plaintiff was under the influence of drugs during

17  his exam, and therefore it was difficult to determine whether his symptoms were due to

18  substances or psychiatric problems.  As a result, he could not complete an accurate mental status

19  exam.  (Tr. at 172.)

20  The ALJ pointed to additional records indicating that when plaintiff was not using

21  drugs and was taking his medication regularly as prescribed, "his mood was more stable, his

22  psychosis dissipated, and his thought processes were more engaged, linear and goal directed.

23  There were no auditory or visual hallucinations or racing thoughts.  The claimant's insight and

24  judgment were improved."  (Tr. at 20.)  These records state after plaintiff had been admitted to

25  Heritage Oaks Hospital due to being a danger to himself and having tested positive for THC and

26  methamphetamine, on discharge after withdrawal from the effects of these drugs and having been

8

prescribed Zyprexa throughout the week long stay, his condition had improved to that described above by the ALJ.  (Tr. at 160-61.)  Additionally, there was no psychosis, and plaintiff was oriented to person, place and time.  He had a plan to care for himself on discharge and was remorseful for the circumstances surrounding his admission.  At this time, there were no psychomotor abnormalities.  (Id.)

The ALJ also relied on the report of Dr. Nakagawa, a psychologist who evaluated plaintiff on October 5, 2004.  Her primary diagnosis was malingering.  (Tr. at 177.)  Plaintiff reported to her that he applied for disability "just 'cause of drug use."  (Tr. at 174.)  She noted that on testing, plaintiff gave inconsistent efforts which clearly suggested an attempt to present in a negative way for secondary gain.  (Id. at 176, 177.)  Dr. Nakagawa concluded that all test results were invalid and unreliable.  When she asked him about what he wished for, he responded in a flippant manner, "I wish to get the hell out of here and get my money - my moola and get the hell out of here, and I guess a house and money."  (Id.)  This psychologist noted significant substance dependence, based in part on plaintiff's own admission.  Due to plaintiff's outright malingering, she could not give an accurate assessment of his functional abilities.[7]  (Id. at 177.)

Without referring to specific records, the ALJ also added that all of the other evidence, aside from Dr. Dalida's reports, did not support schizophrenia and bipolar disorder. There was no record that plaintiff was clinically depressed, and plaintiff himself did not complain of symptoms of depression.  (Id. at 20.)  Records further indicated no psychotic features and intact cognitive function.  (Id.)

Additionally, the ALJ referred to plaintiff's functioning to support the lack of severity of his mental illness, especially when he was not abusing drugs.  For example, plaintiff lives alone, cleans house, cooks, grocery shops, uses public transportation, plays video games, reads, runs errands, and drives.  He has also worked for his parents, and was able to work seven

---

[7]  It should additionally be noted that the ALJ found plaintiff to be not credible and plaintiff has not disputed this finding.  (Tr. at 22.)

1 days a week in 2005.  Plaintiff had testified at the hearing that he had been working full time for

2 a year.  The ALJ found that these activities belie plaintiff's claims of mental illness.  (Id. at 19.)

3       Other mental health records indicate that plaintiff's problems were for the most

4 part related to his substance abuse, as correctly noted by the ALJ.  On May 25, 2005, the

5 diagnosis was amphetamine induced psychosis, with bipolar disorder to be ruled out.  (Tr. at

6 135.)  Sacramento County Mental Health Treatment Center diagnosed methamphetamine

7 induced psychosis and polysubstance dependence, and found that plaintiff's prognosis was poor

8 because he had little insight into his substance abuse problem.  (Tr. at 209-10.)

9       The DDS physicians who reviewed the record also thought that due to plaintiff's

10 malingering, there was insufficient evidence to find an impairment; however, they did diagnose

11 substance addiction disorders, including alcohol, marijuana, methamphetamine and ecstasy

12 abuse.  (Tr. at 179, 187.)

13       Plaintiff refers to 7th grade school records to support his claimed mental problems,

14 yet they indicate only that he was previously diagnosed with ADD but his parents did not think

15 medication would help, and that he underwent mood swings.  (Tr. at 140, 141.)  Plaintiff also

16 refers to other records indicating he was admitted to Heritage Oaks Hospital in 2001 for

17 psychotic and delusional behavior, and he had not been using drugs at that time.  The records

18 referred to by plaintiff are plaintiff's mother's statement, and a March 31, 2004 report from Dr.

19 Kahn of Heritage Oaks which only refers to the 2001 admission by history.  (Tr. at 117, 162.)

20 The actual record from the prior hospitalization is not in the record.

21       That court finds that substantial evidence supports the ALJ's rejection of Dr.

22 Dalida's opinion.[8]

23

24    [8]  In a single sentence at the end of this section, plaintiff states that "the Administrative Law Judge's conclusion that plaintiff's condition was non-severe in the absence of drug abuse is

25 not supported by substantial evidence."  Pl.'s Mot. at 9.  Without any argument or authority supporting this limited attempt to raise a new issue, the court will not address it, but refers

26 plaintiff to its equally cursory but correct analysis as set forth in n. 3 *supra*.

1    B. Whether the ALJ Failed to Fully Develop the Record

2           Plaintiff next claims that the ALJ failed to fully develop the record because his

3    rejection of Dr. Dalida's opinion based on the lack of psychometric testing should have caused

4    him to obtain such testing.  In the alternative, plaintiff claims the ALJ should have obtained

5    expert testimony on the severity of plaintiff's schizoaffective disorder in the absence of

6    methamphetamine abuse.

7           Disability hearings are not adversarial.  Dixon v. Heckler, 811 F.2d 506, 510 (10th

8    Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his

9    decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J.,

10   concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not

11   represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts."

12   Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[9]  The duty also is heightened in the case of

13   a mentally ill claimant who may not be able to protect him or herself.  Id.

14          Evidence raising an issue requiring the ALJ to investigate further depends on the

15   case.  Generally, there must be some objective evidence suggesting a condition which could have

16   a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

17   Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th

18   Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate

19   inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

20          The ALJ can develop the record by (1) making a reasonable attempt to obtain

21   medical evidence from the claimant's treating sources, (2) ordering a consultative examination

22   when the medical evidence is incomplete or unclear and undermines ability to resolve the

23   disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

24   continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242

25

26          [9] See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the
     record even when claimant is represented).

11

1     F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a

2     consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128

3     (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when

4     necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th

5     Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

6               All circuits which have considered the issue of drug or alcohol addiction as a

7     contributing factor material to the finding of disability hold that the burden of proving a disability

8     would exist in the absence of drug or alcohol abuse is squarely on the plaintiff.  Parra v. Astrue,

9     481 F.3d 742, 748 (9th Cir. 2007); Doughty v. Apfel, 245 F.3d 1274, 1275-76 (11th Cir. 2001);

10     Mittlestedt v. Apfel, 204 F.3d 847, 852 (9th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 298 (5th

11     Cir. 1999).  The Ninth and other circuits so holding, have done so after the 1996 pronouncement

12     in Emergency Message 96200 issued by the Social Security Administration which states in part:

13     "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and

14     the various other mental disorders shown by the evidence, a finding of 'not material' would be

15     appropriate."  http://policy.ssa.gov.  Parra rejected a related emergency message, numbered 96-

16     94, which stated in part: "where the MC/PC cannot project what limitations would remain if the

17     individuals stopped using drugs/alcohol, the MC/PC 'should record his/her findings to that

18     effect' and 'the DE will find that DAA is not a contributing material factor to the determination

19     of disability.'"  Id. at 749, n. 5.  The court reasoned that internal agency documents are not

20     binding, and cannot be judicially enforced.  Id.  Furthermore, the agency pronouncements

21     contradicted the purpose of the Contract with America Advancement Act which was "to

22     discourage alcohol and drug abuse, or at least not to encourage it with a permanent government

23     subsidy."  Id., quoting Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001).  As the court

24     succinctly reasoned:

25               An alcoholic claimant who presents inconclusive evidence of
              materiality has no incentive to stop drinking, because abstinence

26               may resolve his disabling limitations and cause his claim to be

rejected or his benefits terminated.  His claim would be guaranteed only as long as his substance abuse continues - a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose.

Id. at 750.

Finally, the court added that a plaintiff is in the best position to know whether she would still be disabled in the absence of substance addiction.  Id. at 748.  Therefore, these emergency teletypes have been superseded by Parra and others.

Here, the ALJ did attempt to obtain a consulting opinion; however, plaintiff did not cooperate with Dr. Nakagawa's exam.  See discussion supra.  As defendant has pointed out, another attempt by the ALJ to obtain further opinion would have been futile in light of plaintiff's malingering and refusal to cooperate.  Therefore, the ALJ fulfilled his duty and was not required to develop the record further.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is entered for the Commissioner.

DATED: 01/23/09                           /s/ Gregory G. Hollows
                                          _____
                                          GREGORY G. HOLLOWS
                                          U.S. MAGISTRATE JUDGE

GGH/076
Alston1876.ss.wpd

13